## NO. 95-402

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 1996

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

WILLIAM E. "BILL" GATTS,

      Defendant and Appellant

APPEAL FROM:    District Court of the Fifth Judicial District,
In and for the County of Jefferson,
The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

        Palmer Hoovestal, Attorney at Law, Helena,
Montana

      For Respondent:

        Hon. Joseph P. Mazurek, Attorney General,
Paul D. Johnson, Ass't Attorney General,
Helena, Montana

        Valerie Wilson, Jefferson County Attorney,
Deborah Butler, Deputy Jefferson County Attorney,
Boulder, Montana

      For Amicus Curiae:

        John M. Morrison; Meloy & Morrison, Helena,
Montana (for Richard and David Fertterer)

FILED

NOV 0 1 1996

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: April 11, 1996

Decided: November 1, 1996

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

William E. "Bill" Gatts (Gatts) appeals from the final judgment entered by the Fifth Judicial District Court, Jefferson county, on his guilty pleas to the felony offense of criminal mischief and five misdemeanor offenses, having reserved the right to appeal the court's denial of his motion to dismiss the felony criminal mischief charge. We reverse and remand.

We restate the dispositive issue on appeal as follows:

Does § 87-1-102(1), MCA (1993), limit penalties for fish and game-related violations to those provided in Title 87 and, thereby, preclude charging Gatts with the offense of felony criminal mischief under § 45-6-101, MCA?

The underlying "facts" relating to this case are taken from the affidavit in support of the State of Montana's (State) motion for leave to file an information. According to the affidavit, Frank Rasmussen (Rasmussen) and Gatts placed bear baits in various locations in the Whitetail Pass area of Jefferson County, Montana, during the summer of 1994. They checked the bear baits on a frequent basis and, when it appeared that a bear had been at the location, they loosed dogs with radio collars after the bear's scent. When the dogs located a bear, Rasmussen or Gatts shot it. At least four bears were taken in this manner from June 1 through August 17, 1994, after the bear hunting season in the area had closed.

On the basis of the State's motion and supporting affidavit, the District Court authorized the filing of an information charging Rasmussen and Gatts with seven criminal offenses. As subsequently

2

amended, Gatts was charged with five misdemeanor offenses contained in Title 87, Fish and Wildlife, of the Montana Code Annotated (MCA): unlawful use of dogs for chasing or hunting bear, in violation of § 87-3-124, MCA; hunting bear during closed season, in violation of § 87-3-104, MCA; using devices (bait lures) to entice bear, in violation of § 87-3-101(3), MCA; possession of parts of unlawfully killed bear, in violation of § 87-3-112(2), MCA; and failure to report harvest of black bear, in violation of § 87-1-304, MCA, and administrative regulations thereunder. In addition, Gatts was charged with felony criminal mischief (common scheme) in violation of § 45-6-101, MCA, in that he knowingly or purposely injured, damaged or destroyed at least four black bears, alleged to be public property; alternatively, Gatts was charged with felony criminal mischief (common scheme) by accountability in violation of §§ 45-6-101, 45-2-301 and 45-z-302, MCA, for soliciting, aiding, abetting, agreeing or attempting to aid Rasmussen in the planning or commission of the felony criminal mischief.

Gatts pleaded not guilty to all of the charges and subsequently moved to dismiss the felony criminal mischief charge on the basis that the charge was precluded by the plain language of § 87-1-102(1), MCA (1993). The State responded that this Court had held to the contrary in State v. Fertterer (1992), 255 Mont. 73, 841 P.2d 467, and that Fertterer was dispositive. The District Court denied Gatts' motion.

Thereafter, Gatts and the State entered into a plea agreement. Pursuant to the agreement, Gatts entered guilty pleas to felony

criminal mischief and the five misdemeanor offenses, **reserving** the right to appeal the denial of his motion to dismiss the felony criminal mischief charge. In exchange for the guilty pleas, the State recommended that the "by accountability" criminal mischief charge be dismissed and that all jail and prison time be suspended.

The District Court deferred imposition of sentence for three years subject to certain terms and conditions, including suspension of Gatts' hunting, fishing and trapping privileges for three years, and joint and several liability with Rasmussen for $2,000. Gatts appeals.

> Does § 87-1-102(1), MCA (1993), limit penalties for fish and game-related violations to those provided in Title 87 and, thereby, preclude charging Gatts with the offense of felony criminal mischief under § 45-6-101, MCA?

In denying Gatts' motion to dismiss, the District Court implicitly concluded that the felony criminal mischief charge was not precluded by § 87-1-102(1), MCA (1993). We review a trial court's denial of a motion to dismiss for abuse of discretion. State v. Fuller (Mont. 1996), 915 P.2d 809, 811, 53 St.Rep. 325, 326 (citations omitted). Where the denial is based on a legal conclusion, however, we first review that conclusion to determine whether it is correct. See Fuller, 915 P.2d at 811.

Because our analysis of § 87-1-102(1), MCA (1993), necessarily falls within the context of Title 87, we begin with an overview of that Title of the Montana Code Annotated, entitled Fish and Wildlife. Title 87 constitutes the legislature's enactment of a comprehensive and wide-ranging body of law regarding fishing, hunting and trapping in Montana. It encompasses and controls such

4

**diverse fish and game-related matters as licensing requirements,** regulation of game farms, cooperative agreements regarding federally owned land, and criminal penalties for activities relating to fish and game. See, e.g., §§ 87-2-103, 87-4-407, 87-1-703 and 87-1-102, MCA. To this extent, Title 87 is similar to other titles of the MCA which are comprised of various regulatory statutes, and corresponding duties and powers, relating to a specific subject matter.

With regard to criminal penalties and related enforcement matters, however, the provisions of Title 87 represent a significant departure from those contained in most other titles-- with the exception of Title 45, entitled Crimes--of the MCA. Both misdemeanor and felony fish and game offenses are contained in Title 87. See §§ 87-1-102 and 87-3-118, MCA. The Department of Fish, Wildlife, and Parks (Department) specifically is authorized to "enforce all the laws of the state respecting the protection, preservation, and propagation of fish, game, fur-bearing animals, and game and nongame birds within the state." Section 87-1-201(2), MCA. In discharging that duty, the Department possesses all powers necessary "to bring actions in the proper courts of this state for the enforcement of the fish and game laws. . ." Section 87-1-201(1), MCA. Costs associated with prosecutions of fish and game violations, such as the costs of boarding prisoners, may be paid from fish and game moneys in the state special revenue fund to the county treasurer in the county where the costs were incurred. Section 87-1-104, MCA. These provisions, while not necessarily

5

unprecedented in other titles of the MCA, are certainly uncommon.

Other provisions contained in Title 87 also depart significantly from those generally contained in other titles. For example, the Department is a "criminal justice agency" for purposes of obtaining technical assistance and support services provided by the board of crime control. Section 87-1-502(7), MCA. In addition, authorized officers of the Department are expressly granted peace officer status with concomitant powers of search, seizure and arrest. Section 87-1-502(7)(a), MCA. State fish and game wardens may undertake certain searches, without a warrant, and may arrest fish and game misdemeanants. Sections 87-1-506(2) and (6), MCA.

Against this backdrop regarding the encompassing nature of Title 87 and the enforcement authority of the Department and its officers and wardens thereunder, we turn to § 87-1-102(1), MCA (1993), the proper interpretation of which is at issue in the present case. There is no question but that § 87-1-102(1), MCA (1993), generally provides the sentencing parameters for fish and game-related violations. The precise issue before us, however, is whether that statute limits penalties for fish and game-related violations to those provided in Title 87 and, thereby, precludes charging, convicting and sentencing Gatts for felony criminal mischief under § 45-6-101, MCA. We conclude that it does.

Section 87-1-102(1), MCA (1993), provides in pertinent part:

> A person who purposely or knowingly violates any provision of this title, any other state law pertaining to fish and game, or the orders or rules of the [fish, wildlife, and parks] commission or department is guilty

6

of a misdemeanor, except if a felony is expressly provided by law, and shall be fined not less than $50 or more than $500, imprisoned in the county jail for not more than 6 months, or both, unless a different punishment is expressly provided by law for the violation.

(Emphasis added.) Our role in construing statutes is clear: we are "to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. The intention of the legislature is to be pursued. Section 1-2-102, MCA. Where we can determine that intent from the plain meaning of the words used in a statute, we may not go further and apply any other means of interpretation. Clarke v. Massey (1995), 271 Mont. 412, 416, 897 P.2d 1085, 1088 (citation omitted).

At the outset, it is clear that the first and third clauses of the statute--referencing violations of any provision of Title 87 or of orders or rules of the commission or department--refer specifically and only to what commonly may be called fish and game violations. "Provisions of this title" are statutes contained within Title 87, entitled Fish and Wildlife, which is the comprehensive statutory body of law enacted by the legislature to regulate fishing, hunting and trapping in Montana. Likewise, the phrase "orders or rules of the commission or department" refers to orders or rules of the Fish, Wildlife, and Parks Commission or the Department, both of which are statutorily charged with regulating matters relating to fish and wildlife under Title 87. See, e.g., §§ 87-1-101 and 87-1-102, MCA.

The second clause of § 87-1-102(1), MCA (1993), references

7

"any other state law pertaining to fish and game[,]" and this language is one of the focal points of the dispute presently before us. As noted above, we must pursue the legislative intent of a statute by looking initially at the plain meaning of the statutory language. Clarke, 897 P.2d at 1088. In the search for plain meaning, we must reasonably and logically interpret that language, giving words their usual and ordinary meaning. Werre v. David (1996), 275 Mont. 376, 385, 913 P.2d 625, 631 (citations omitted).

The word "pertaining" is commonly understood to mean, and defined as, "having reference to." Webster's Ninth New Collegiate Dictionary 878 (1988). Thus, the § 87-1-102(1), MCA (1993), language "any other state law pertaining to fish and game" clearly means that other laws specifically referring to fish and game may be found elsewhere in the MCA and, indeed, such other fish and game laws do exist. For example, chapter 47 of Title 37, MCA, addresses outfitters and guides and, therefore, contains other state statutes pertaining to fish and game. Nothing in the legislature's use of "pertaining to fish and game" suggests an intent to authorize charging and sentencing a fish and game-related violation or offense under § 45-6-101, MCA. We conclude, therefore, that the plain language of these three initial clauses of § 87-1-102(1), MCA (1993), manifests the legislature's intent that § 87-1-102(1), MCA (1993), encompass and provide the sentencing for all fish and game violations.

This is not to say, of course, that those clauses--with the addition of the "misdemeanor" language immediately following them

in § 87-1-102(1), MCA (1993) --limit all fish and game violations to misdemeanors. The statute specifically goes on to authorize felony charges and sentences for fish and game violations where "expressly provided by law," and the legislature has expressly so provided.

Under § 87-3-118, MCA, it is a felony offense to purposely or knowingly sell unlawfully taken wildlife or to purposely or knowingly possess unlawfully taken wildlife having a value of more than $1,000. A conviction of either of these offenses can result in imprisonment for up to 5 years, a fine of up to $50,000, or both; in addition, the hunting, fishing and trapping permit and license privileges of a person convicted of these felonies must be revoked for a minimum of 3 years, with a maximum lifetime revocation. Section 87-3-118, MCA. The enactment in 1991 of these felony fish and game offenses as part of the legislature's comprehensive statutory program encompassing fish and game matters is a clear and express indication of legislative intent regarding which fish and game-related conduct may be subject to felony charges in Montana. Had the legislature intended to authorize additional felony fish and game offenses, it could and would have done so; it did not. Thus, faced with such a comprehensive body of law on fish and game matters, and such clear legislative intent to limit felony charges for fish and game-related conduct to those expressly set forth in § 87-3-118, MCA, we cannot properly interpret the "except if a felony is expressly provided by law" language in § 87-1-102(1), MCA (1993), to permit additional or different felony charges for fish and game-related conduct under

9

Title 45, MCA.  See §§ 1-2-101 and 1-2-102, MCA.

The final portion of § 87-1-102(1), MCA (1993), which requires our attention is the language following the "misdemeanor" and "except" language:  "unless a different punishment is expressly provided by law for the violation."  The State contends that this language authorizes a charge, conviction and sentence for criminal mischief under § 45-6-101, MCA, as different punishment expressly provided by law for the violation.  We disagree.

First, the language must be read in the context of both the comprehensive body of statutory law regulating all manner of fish and game matters contained in Title 87 and the language which precedes it in § 87-1-102(1), MCA (1993), which we have discussed above.  The "unless" language, like the "felony" language, refers specifically to fish and game violations and laws as set forth in Title 87.  In this regard, subsections (2)(a) through (2)(f) of § 87-1-102, MCA (1993), expressly provide punishments for certain misdemeanor fish and game violations which differ from the general misdemeanor penalties provided in § 87-1-102(1), MCA (1993)

Moreover, § 87-1-102(5), MCA (1993), also expressly provides for the penalties provided therein to be cumulative to any penalties provided in Title 37, chapter 47, and Title 87, chapter 4, part 2.  The enactment of § 87-1-102(5), MCA (1993), which expressly references statutes pertaining to fish and game which are outside the confines of Title 87, further reflects legislative intent that § 87-1-102(1), MCA (1993), limits the penalties available for fish and game violations.

10

Section 87-1-109, MCA (1993), **also** expressly **provides for a** different punishment for fish and game-related conduct pursuant to the "unless" language of § 87-1-102(1), MCA (1993). Under § 87-1-109, MCA (1993), any violation of Title 87 "is an offense for purposes of the crimes of attempt, solicitation, and conspiracy set out in Title 45, chapter 4." Like § 87-1-102(5), MCA (1993), this statute specifically refers out of Title 87. Importantly though, and unlike § 87-1-102(5), MCA (1993), § 87-1-109, MCA (1993), expressly renders fish and game-related conduct subject to specific provisions of Title 45. Had the legislature intended to authorize the charging and punishment of fish and game-related conduct in other regards outside of Title 87--for example, pursuant to the criminal mischief statute--it could and would have done so here; it did not. Instead, the legislature expressly provided, within the parameters of Title 87, for the charging of fish and game-related conduct pursuant to three--but only three--statutes contained in Title 45, namely §§ 45-4-101 through 45-4-103, MCA. Thus, the enactment of § 87-1-109, MCA (1993), constitutes an additional indication of legislative intent to limit penalties for fish and game-related conduct to those contained or expressly provided for in Title 87.

We conclude that, by its plain language, § 87-1-102(1), MCA (1993), limits penalties for fish and game-related conduct to those provided for in Title 87. Having so concluded, we may not go further and apply any other means of interpretation such as legislative history. See Clarke, 897 P.2d at 1088. We do note in

11

passing, however, that the legislative history of 1991 **Mont.** Laws Chapter 329, in which the felony fish and game offenses were created, appears to clarify that the Department understood that felony charges for fish and game-related conduct could be brought only within the parameters of Title 87.

The State advances a number of arguments in opposition to the conclusion we have reached. It argues initially that <u>Fertterer</u> is correct and, in addition, that <u>Fertterer</u> is controlling authority which should be reaffirmed because of the fundamental importance of <u>stare decisis</u> to the rule of law. We disagree with both propositions.

Based on an undercover investigation of a large-scale poaching operation, the Fertterers were charged with numerous misdemeanor game violations under Title 87 and felony criminal mischief pursuant to § 45-6-101, MCA; the criminal mischief charges were premised on the Fertterers' unlawful killing of elk, deer, antelope and a mountain lion. They were convicted of several Title 87 misdemeanors and two counts of felony criminal mischief. <u>Fertterer,</u> 841 P.2d at 468-69.

The Fertterers raised a number of issues on appeal. Among other things, they argued that § 87-1-102(1), MCA (1989), precluded the felony criminal mischief charge under Title 45. They also contended that wild animals are not property or public property in Montana for purposes of the criminal mischief charge. <u>Fertterer,</u> 841 P.2d at 469.

Insofar as it is relevant to the case presently before us,

12

this Court split by a four to three vote on the issue of whether the 1989 version of Title 87, MCA, provided the exclusive remedy for the illegal taking of game, with the majority holding that it did not. Fertterer, 841 P.2d at 472. The statutory analysis advanced by the dissent produced the opposite conclusion: that, under the statutes in effect at the time, it was improper to charge the Fertterers with what the Court agreed were felony fish and game violations. Fertterer, 841 P.2d at 475 (Gray, J., dissenting). That conclusion, in the view of the dissent, was significantly buttressed by the 1991 legislature's amendments to Title 87. Fertterer, 841 P.2d at 475-76 (Gray, J., dissenting).

The 1991 amendments were not before us in Fertterer, but are before us in this case which arises under the 1993 version of Title 87. Therefore, Fertterer may not be entirely on point and it may be unnecessary, from a purely technical standpoint, to overrule that decision or address the State's stare decisis argument in the context of doing so. It is clear, however, given our analysis of § 87-1-102(1), MCA (1993), above, that allowing Fertterer to stand would result in apparently inconsistent lines of authority from a rationale perspective, if not from the perspective of analyzing precisely identical statutes. Thus, we turn to the State's argument that Fertterer should be reaffirmed because of the importance of stare decisis.

Stare decisis means "[t]o abide by, or adhere to, decided cases." Black's Law Dictionary 1406 (6th ed. 1990). It is of fundamental and central importance to the rule of law. Patterson

v. McLean Credit Union (1989), 491 U.S. 164, 172, 109 S.Ct. 2363, 2370, 105 L.Ed.2d 132, 147 (citation omitted). Indeed, there is no question but that "[v]ery weighty considerations underlie the principle that courts should not lightly overrule past decisions." Moragne v. States Marine Lines (1970), 398 U.S. 375, 403, 90 S.Ct. 1772, 1789, 26 L.Ed.2d 339, 358. We have held, in this regard, that "stare decisis is a fundamental doctrine which reflects our concerns for stability, predictability and equal treatment. ." Formicove, Inc. v. Burlington Northern, Inc. (1983), 207 Mont. 189, 194, 673 P.2d 469, 472.

Court decisions are not sacrosanct, however, and stare decisis is "not a mechanical formula of adherence to the latest decision[.]" Patterson, 491 U.S. at 172. Indeed, we have held that stare decisis does not require us to follow a manifestly wrong decision. Formicove, 673 P.2d at 472. While the State concedes this point, it urges us to follow United States Supreme Court authority and determine that the burden on a party urging a departure from stare decisis is particularly heavy "where the Court is asked to overrule a point of statutory construction." See Patterson, 491 U.S. at 172.

We decline to do so. First, we observe that our holding in Formicove--that we are not bound to follow a manifestly wrong decision--was made in the context of a statutory construction case. See Formicove, 673 P.2d at 472. More importantly, however, the doctrine's strength is not dependent on the creation of artificial differences in burdens of proof or persuasion. Rather, it depends

14

on appellate courts' continued recognition of, and commitment to, the importance of _stare decisis_ in a society governed by the rule of law. Our commitment to the doctrine, and to the concerns on which it is grounded, continues unabated.

For the reasons expressed by the dissent in _Fertterer_ and more fully set forth above in the context of the present case, however, we conclude that the holding in _Fertterer_ that Title 87 does not provide the exclusive remedy for fish and game violations was manifestly wrong. That portion of _Fertterer_ is, therefore, expressly overruled. Based on our resolution of that issue herein, we need not address or overrule the holdings in _Fertterer_--or the State's and amicus curiae's arguments here--which relate to wild animals as "public property" and "property" within the purview of §§ 45-6-101 and 45-2-101, MCA, respectively.

The State also argues, and cites to numerous cases involving, the long-standing rule in Montana that the prosecutor has discretion to determine which offense to charge when conduct violates more than one statute, as long as the offenses have differing elements or require different proof. _See_, _e.g._, State v. Smaage (Mont. 1996), 915 P.2d 192, 194, 53 St.Rep. 294, 295; State v. Arlington (1994), 265 Mont. 127, 165, 875 P.2d 307, 330; State v. Brady (1991), 249 Mont. 290, 295-96, 816 P.2d 413, 416; State v. Booke (1978), 178 Mont. 225, 230, 583 P.2d 405, 408. It points out that this rule applies even when one of the offenses is a felony of more general application than a misdemeanor more specifically addressing the conduct. _See_, _e.g._, _Smaase_, 915 P.2d at 194-95;

15

Brady, 816 P.2d at 416.

The prosecutorial discretion and general versus specific cases are not directly implicated here, however. Those principles are applicable where several charges are available as a matter of law. Here, we have concluded that the legislature intended otherwise with regard to fish and game violations. In other words, in enacting § 87-1-102(1), MCA (1993), the legislature intended to preclude fish and game violations from being charged under Title 45, except where expressly authorized in Title 87. In this regard, the State's citation to State ex rel. Fletcher v. District Court (1993), 260 Mont. 410, 859 P.2d 992, is, in part, appropriate. In that case, we addressed the authority and responsibility of county attorneys generally, but noted that a prosecutor's broad discretionary powers "are not without limit." Fletcher, 859 P.2d at 995. We observed that a prosecutor's control of a criminal action is "'limited only by such restrictions as the law imposes."' Fletcher, 859 P.2d at 995 (citation omitted). By virtue of our conclusion above that the felony criminal mischief charge is precluded by § 87-1-102(1), MCA (1993), the present case imposes one of those exceedingly rare legal restrictions on prosecutorial discretion generally referenced in Fletcher.

Nor is the State correct in asserting that Smaage is "directly pertinent to the central issue on appeal" in the present case. Smaage involved a criminal endangerment charge and conviction in which an issue on appeal was whether the defendant should have been charged under the driving under the influence of alcohol statutes.

16

Smaage, 915 P.2d at 193. We focused on the principles governing alternative charging statutes, observing that when no clear and manifest legislative intent to the contrary exists and different proof is required under alternative statutes, the more specific statutory violation need not be charged. Smaage, 915 P.2d at 194. We examined the legislative history of the criminal endangerment statute and determined that it indicated no clear and manifest legislative intent to prohibit the use of the criminal endangerment statute in drinking and driving situations. Smaage, 915 P.2d at 194.

To the extent Smaase has any application to the present case, that application is limited to our focus on the question of legislative intent. While we concluded in Smaage that there was no clear intent to prohibit the use of the criminal endangerment statute in drinking and driving situations, we have concluded in this case that the legislature clearly intended § 87-1-102(1), MCA (1993), to preclude charging Gatts with criminal mischief under Title 45.

The State also argues that State v. Duncan (1979), 181 Mont. 382, 593 P.2d 1026, and State v. Moore (1977), 174 Mont. 292, 570 P.2d 580, both of which involved an offense defined in the Crimes title of the Montana statutes and an offense defined in another title, mandate a conclusion that prosecutorial discretion controls even when the statute defining the less serious offense is contained in a comprehensive body of law on a particular subject. We disagree.

17

In *Duncan*, the State charged the defendant with four **criminal** offenses after investigations by both the federal Securities Exchange Commission and the state Auditor's Office; two of the charged offenses were set forth in the Crimes title, and two were contained in the Securities Regulation title, of the Revised Codes of Montana. *Duncan*, 593 P.2d at 1028-29. The defendant moved to dismiss. The district court dismissed one of the charges in the Crimes title before trial and, after convicting the defendant of deceptive practices in violation of § 94-6-307, RCM (1947), dismissed the charge of fraudulent securities practices as defined in § 15-2005(1), RCM (1947). *Duncan*, 593 P.2d at 1029. The defendant appealed.

After concluding that sufficient evidence supported the defendant's conviction of the offense of deceptive practices, we briefly addressed his contention that he should have been charged with the specific fraudulent securities practices offense rather than the general deceptive practices offense contained in the Crimes title. *Duncan*, 593 P.2d at 1034. We observed that we previously had declined to apply in criminal cases the "specific controls over the general" rule of statutory construction utilized in civil cases. We also quoted from State v. Lagerquist (1968), 152 Mont. 21, 30-31, 445 P.2d 910, 915, for the proposition that when the legislature provides for a course of action through more than one statute, the prosecution may choose either applicable law. *Duncan*, 593 P.2d at 1034. Noting that the specific securities offense had, indeed, been charged and later dismissed by the

18

district court after conviction on the deceptive practices charge, we concluded that the defendant had been properly charged and convicted. Duncan, 593 P.2d at 1034.

Duncan is inapplicable here. First, the question of whether the Securities Regulation title precluded a charge under the Crimes title for the defendant's acts was neither raised nor addressed in Duncan. Equally important, however, is the Laserauist language, quoted in Duncan, that the prosecution has charging discretion when the legislature provides for charges under several statutes. See Duncan, 593 P.2d at 1034. As discussed above, the legislature has not so provided in this case. Rather, the legislature has provided that all fish and game violations be prosecuted pursuant to the provisions of Title 87. Thus, Duncan is not on point.

Moore more closely resembles the case presently before us. There, the defendant was charged with felony deceptive practices under the Criminal Code and moved to dismiss on the basis that he was charged under the wrong statute; in the defendant's view, he should have been charged with misdemeanor welfare fraud under the Welfare Code. Moore, 570 P.2d at 582. The district court dismissed the information and the State appealed.

We first addressed the two statutes and concluded that the specific Welfare Code offense did not preclude prosecution for the acts under the more general Criminal Code, provided the facts supported a charge under either statute; in doing so, we relied on our previous refusal to apply the specific versus general rule of statutory construction in the criminal context and on Laserauist.

19

_Moore_, 570 P.2d at 582-84. In particular, we observed that _Laserquist_ permitted prosecution "under either applicable statute absent a clear and manifest legislative intent to the contrary." _Moore_, 570 P.2d at 584.

We then addressed, in one paragraph, the defendant's contention that _Lagerquist_ was distinguishable because the comprehensive nature of the Welfare Code indicated a legislative intent to preempt the entire field of welfare fraud to the exclusion of statutes contained in the Criminal Code. _Moore_, 570 P.2d at 585. We observed that the misdemeanor statute at issue-- and, indeed, the entirety of the Welfare Code--covered only one species of welfare fraud and did not encompass such welfare-related offenses as embezzlement of welfare funds or forgery of welfare warrants. _Moore_, 570 P.2d at 585. On that basis, we did not perceive a legislative intent to preempt Criminal Code statutes by enactment of the Welfare Code. _Moore_, 570 P.2d at 585.

Thus, the State is correct in contending here that, in _Moore_, we rejected the defendant's contention that the Welfare Code constituted a comprehensive body of law which precluded application of Criminal Code statutes. However, Title 87 in its entirety and § 87-1-102(1), MCA (1993), in particular, differ markedly from the titles and statutes at issue in _Moore_. Among other things, for example, the Welfare Code at issue in _Moore_ vested no specific law enforcement authority in the department of public welfare created therein, or in any of its employees, and did not render the department a criminal justice agency for any purpose. Moreover,

20

the Welfare Code expressly defined only one misdemeanor offense--the one at issue in <u>Moore</u>--and otherwise contained only a general penalty statute making any knowing violation of the Code a misdemeanor. Furthermore, unlike the penalty statute at issue in the present case, the general penalty statute in the <u>Moore</u> Welfare Code did not contain other language bringing all welfare-related violations within its purview. For these reasons, it was appropriate for us to conclude in <u>Moore</u> that neither the Welfare Code nor the general penalty statute contained therein evidenced legislative intent to preempt application of statutes in the Criminal Code. As discussed in detail above, Title 87 does evidence a legislative intent to occupy the field regarding fish and game violations and, therefore, to preclude charges under Title 45. Therefore, <u>Moore</u> is inapposite here.

We hold that the District Court erred in concluding that § 87-1-102(1), MCA (1993), did not preclude charging Gatts with the offense of felony criminal mischief under § 45-6-101, MCA. On that basis, we further hold that the District Court abused its discretion in denying Gatts' motion to dismiss that charge.

Reversed and remanded for entry of an order vacating Gatts' conviction of the offense of felony criminal mischief and dismissing that charge, and for reconsideration of Gatts' sentence in light of that dismissal.

_____
Justice

21

we concur:

_____
Chief Justice

_____
William E. Hunt Sr.

_____
Terry Trieweiler

_____

_____
Justices

22

Justice W. William Leaphart, dissenting

I dissent. The Court holds that § 87-1-102(1), MCA (1993), provides the exclusive punishment for violation of Title 87 or of any fish and game laws in the State of Montana. I fail to see a clear and manifest legislative intent that Title 87 or the language of § 87-1-102(1), MCA, sets forth exclusive remedies. The statute states that a person who violates Title 87 or any other law relating to fish and game is guilty of a misdemeanor unless a different punishment is expressly provided by law for the violation. It is axiomatic that conduct can violate more than one statute or title to the Montana Code. A declaration that, to the extent such conduct violates the fish and game laws, it is a misdemeanor, is not the same as saying that such conduct cannot also constitute a violation of criminal statutes in Title 45. Unless there is a clear manifestation of legislative intent to the contrary, the prosecutor can charge under either applicable statute. State v. Lagerquist (1968), 152 Mont. 21, 31, 445 P.2d 910, 915; State v. Evans (1969), 153 Mont. 303, 306, 456 P.2d 842, 844. The prosecutor has discretion to determine the charge when the conduct violates more than one statute as long as the statutes have differing elements. This rule applies even when one of the statutes is a felony of more general application than a misdemeanor statute which more specifically addresses the conduct and even if the misdemeanor statute is part of a comprehensive body of law on the particular subject. State v. Duncan (1979), 181 Mont. 382, 395-96, 593 P.2d 1026, 1034.

23

By way of analogy, even though Title 61 (Motor Vehicles), like Title 87 (Fish & Wildlife), comprehensively provides that "it is a misdemeanor for a person to violate any of the provisions of this chapter unless the violation is declared to be a felony," § 61-8-711, MCA, the misdemeanor provisions of the traffic code in Title 61 are not the exclusive remedy for drunk driving if the conduct satisfies the elements of a more serious felony crime, negligent homicide, § 45-5-104, MCA, for example. See State v. Gould (1985), 216 Mont. 455, 704 P.2d 20.

In State v. Smaage (Mont. 1996), 915 P.2d 192, 53 St.Rep. 294, we affirmed Smaage's conviction for criminal endangerment for driving recklessly down the streets of Helena while his blood alcohol content was .250. We rejected his argument that he should have been charged under the more specific DUI statutes of Title 61 rather than the more general criminal endangerment statute. Most recently in State v. Bell (Mont. 1996), 923 P.2d 524, 53 St.Rep. 792, we held that when a person drives down a city street at speeds of up to 80 mph in the middle of the morning, he is guilty of more than just misdemeanor reckless driving under Title 61; he can be charged with and found guilty of felony criminal endangerment under Title 45, MCA.

I see nothing in § 87-1-102, MCA, which states that the penalties provided in Title 87 are the "only" penalties allowed for such conduct or that they are "exclusive" of all other titles. I would reaffirm our holding in State v. Fertterer (1992), 255 Mont. 73, 841 P.2d 467, that Title 87 does not provide the exclusive remedy for conduct which constitutes both a fish and game violation

24

and a violation of the criminal code, Title 45.

At best, Title 87 is aimed at controlling the hunting of wild game. The defendants here were not "hunting." They were engaged in a calculated slaughter of bears. Over two and half months, the defendants baited bears, chased them with hounds equipped with radio collars, purposely wounded bears to provide sport for the dogs, and killed smaller bears, cut their bellies open and used their carcasses as bait for other bears. This conduct is clearly more egregious than simply "unlawfully taking, killing, possessing, or transporting a . black bear ." under Title 87. Section 87-1-102(2)(a), MCA. The slaughter of at least four black bears clearly exceeds the scope of any defined offense in Title 87.

In conclusion, the plain language of § 87-1-102(1), MCA, does not purport to be exclusive. Secondly, I fail to see the clear and manifest legislative intent to have Title 87 completely "occupy the field." The misdemeanor provisions of Title 87 should no more be the exclusive remedy for this senseless baiting and slaughter of wild animals than it would be if someone were to mow down a herd of antelope with a machine gun.

_____
Justice

Chief Justice J. A. Turnage and Justice Charles E. Erdmann, join in the foregoing dissent.

_____
Chief Justice

_____
Justice

25