No. 88-442

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

       Plaintiff and Respondent,

-vs-

ARNOLD BRADY, SR.,

       Defendant and Appellant.

FILED

JUL 23 1991

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Arnold Brady, Sr., Deer Lodge, Montana; Pro Se.

      For Respondent:

      Hon. Marc Racicot, Attorney General, Helena,
Montana; Deanne L. Sandholm, Assistant Attorney
General, Helena, Montana; Dennis Paxinos, County
Attorney, Billings, Montana; Russell C. Fagg, Deputy
County Attorney, Billings, Montana.

Submitted on Briefs : June 18, 1991

Decided: July 23, 1991

Filed:

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Arnold Brady, Sr., was convicted of aggravated kidnapping, aggravated assault, felony assault, and resisting arrest in a jury trial in the District Court of the Thirteenth Judicial District, Yellowstone County. Appearing pro se, he appeals. We affirm.

The issues are:

1. Does the dangerous offender designation violate the Eighth Amendment because it is disproportionate to the severity of the crime?

2. Was it error to charge Brady with aggravated kidnapping instead of domestic abuse?

3. Was Brady denied due process because the court did not hold a pretrial evidentiary hearing on his claim of ineffective assistance of counsel?

4. Did this Court deny Brady his right to counsel on appeal?

5. Did the District Court err in not allowing a "failure to agree" instruction?

6. Was Brady denied effective assistance of counsel?

This case arose out of a December 3, 1987, beating of Francine Burgess. Brady testified at trial that he and Francine had been living together for "quite a while." On that morning, Francine had been driving around Billings, Montana, with two other persons. She testified that they had been drinking and had used some "speed." Brady was driving around in another car with several passengers.

The car in which Francine was riding stopped near Colonial Apartments, where the driver got out to talk with a friend. According to Francine's testimony and the testimony of others present, Brady pulled up in his car, ran up behind the car in which Francine was still seated, jumped into the car, and began yelling at Francine, hitting her in the face, and pounding her head against the steering wheel. He dragged Francine from the car by her hair and threw her into the back seat of the car he had been driving.

Brady continued to punch Francine as his brother drove to Coulson Park near the Yellowstone River. At the park, Brady dragged Francine from the car, punched her in the stomach, and dragged her down to the river's edge.

The others in the car eventually joined Brady and Francine on the river bank. One of them testified at trial that as they sat joking and laughing, Brady occasionally hit Francine. He also kicked her in the mouth, dislodging two of her teeth. Finally, everyone except Brady and Francine left the park.

Francine testified that she feared that Brady would kill her after the others left. However, a kayaker who had been passing by in the river seemed to notice them, and stayed in one spot watching Brady and Francine on the shore.

One of the people who had been with Brady called a police detective after she left the park. She took him to find Brady and

Francine, who were then walking together. The detective described Francine's condition at that time as follows:

> Well, the woman was severely beaten when I observed her. Her face was swelling to the point where it reminded me of a pumpkin with two slits in her eyes -- where the eyes should be, there were two slits. Her face was perfectly round and she had blood coming from her nose and from her mouth.

Francine was taken by ambulance to a hospital, where she remained for several days. Although doctors initially believed she might have life-threatening intracranial bleeding, a CAT scan later revealed no broken bones or brain injury. She did lose two teeth, one of which had to be surgically extracted from where it had lodged in her gum.

During his arrest, Brady punched one officer in the face and fought with others. He had abrasions on his knuckles, which were photographed, and about which he stated, "I don't know how I did it, whether I did it hitting my girlfriend or fighting with the police."

At trial, Brady denied beating Francine. He testified that he believed she had been beaten by someone else before he joined her that morning, and that she further injured herself in several falls due to her intoxicated condition.

Brady's family retained Gary Wilcox to represent him. Prior to trial, Brady complained to the District Court that he was

receiving ineffective assistance of counsel from Wilcox. The court appointed Allen Beck as co-counsel for the defense.

After a three-day jury trial, Brady was found guilty of aggravated kidnapping of and aggravated assault upon Francine, felony assault on the police officer he punched in the face, and resisting arrest. Brady was sentenced to forty years in prison and was designated a dangerous offender.

Arthur Thompson was appointed to represent Brady on appeal. Brady filed a pro se motion in District Court asking that Thompson be removed as counsel and that Allen Beck be appointed as his counsel on appeal. That motion was denied. Subsequently, Brady requested that new counsel be appointed and this Court granted Thompson leave to withdraw. This Court ordered that new counsel be appointed to represent Brady on appeal.

Vernon Woodward, Brady's new appellate counsel, concluded that there were no nonfrivolous issues which could be raised on appeal. He was granted leave to withdraw after he filed a brief and this Court reviewed the record pursuant to Anders v. California (1967), 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493. The Court has allowed Brady to proceed with the appeal pro se.

I

Does the dangerous offender designation violate the Eighth Amendment because it is disproportionate to the severity of the crime?

5

Brady argues that his designation as a dangerous offender violates the prohibition against cruel and unusual punishment because it is grossly disproportionate to the severity of his crime. He states that

> [t]he Defendant in this case was convicted of Kidnapping his wife after she had deliberately caused in the past the Defendant to be locked up on charges of domestic abuse and over the past two years that she and the Defendant were living together it had became a power struggle in which she used to control the Defendant and because of this principle of proportionate should apply because the constitutional language itself suggests no exception for imprisonment.

A sentence which falls within the maximum authorized by statute is not cruel and unusual punishment unless the sentence is so greatly disproportionate to the crime that it shocks the conscience and outrages the moral sense of the community or of justice. State v. Bruns (1984), 213 Mont. 372, 377, 691 P.2d 817, 820. The maximum penalty for aggravated kidnapping is 100 years, § 45-5-303(2), MCA; for aggravated assault 20 years, § 45-5-202(3), MCA; and for felony assault 10 years, § 45-5-202(3), MCA. Brady's sentence is well within the maximum allowed by law. Brady is informed by this Court that the criminality of his senseless and brutal beating of Francine is in no way lessened because she may have been his common-law wife. The District Court stated

> [t]his kidnapping and assault was one of the most brutal this Court has had related before it, involving the merciless beating and kick-

6

ing of a defenseless woman over a period of at least two hours. . . The Court believes that but for the presence of a kayaker, the defendant might very well have been before the Court for a homicide. . . The defendant has a previous felony conviction for a crime of violence against a woman involving throat cutting and stabbing. . . There is no place in civilized society for such behavior.

Under § 46-18-404, MCA, an offender may be designated non-dangerous only if the sentencing court determines that the offender does not represent a substantial danger to other persons or society. We conclude that Brady's designation as a dangerous offender does not constitute error.

## II

Was it error to charge Brady with aggravated kidnapping instead of domestic abuse?

Brady argues that he should have been prosecuted under the domestic abuse statute, § 45-5-206, MCA, instead of the aggravated kidnapping statute, § 45-5-303, MCA, because the domestic abuse statute is specifically tailored to the offense involved here. He cites Preiser v. Rodriguez (1973), 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439, in support of the proposition that a more specific statute will be given precedence over a more general one. This claim was not raised at the District Court level, but in light of Brady's claim of ineffective assistance of counsel, we will treat it as if it was raised below.

<u>Preiser</u> concerned application of the more specific rules for petitions for habeas corpus under the federal habeas corpus statute as opposed to the broad language of rules for petitions filed under 42 U.S.C. § 1983. That case is not applicable here.

Aggravated kidnapping and domestic abuse each contain elements not common to the other offense. Aggravated kidnapping requires that the defendant restrained another person by secreting that person in a place of isolation or by using or threatening to use physical force. That element is not required in the offense of domestic abuse. Domestic abuse requires that the victim be a family member or household member. That element is not required for aggravated kidnapping. Where each offense contains an element not common to the other, a defendant may be charged with both. State v. Thornton (1985), 218 Mont. 317, 708 P.2d 273. Brady does not dispute that all of the elements of aggravated kidnapping were present in the case presented by the State. We further note that the jury was instructed on the lesser included offenses of kidnapping and misdemeanor unlawful restraint. We hold that there was no error in the State's choice to prosecute Brady for aggravated kidnapping and not to prosecute him for domestic abuse.

III

Was Brady denied due process because the court did not hold a pretrial evidentiary hearing on his claim of ineffective assistance of counsel?

8

Brady was granted the relief he requested in his pretrial claim of ineffective assistance of counsel. New counsel, Allen Beck, was appointed to represent him. It was up to Brady, not the court, to release the attorney who had been privately retained. We hold that there was no denial of due process as to this matter.

## IV

Did this Court deny Brady his right to counsel on appeal?

Brady argues that because the Court allows him to continue pro se on appeal after allowing his attorney to withdraw on the grounds that there are no meritorious appealable issues, the Court implies that there are arguable legal points for appeal. He states that new counsel should be appointed to help him raise those points.

In Anders, the United States Supreme Court stated that, after granting the request to withdraw of appellate counsel for an indigent criminal defendant, the court may "dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires." Anders, 386 U.S. at 744. It is not required that new counsel be appointed at this point. We hold that Brady has not been denied his right to counsel on appeal.

## V

Did the District Court err in not allowing a "failure to agree" instruction?

This issue has no merit because the trial court did give a "failure to agree" instruction, at Instruction No. 28.

VI

Was Brady denied effective assistance of counsel?

Brady argues that he received ineffective assistance of counsel because, at trial, his attorney failed to offer a jury instruction on the "lesser included offense" of domestic abuse and to present evidence that he and Francine were married at common law, in support of such an instruction. But, as discussed above, domestic abuse is not a lesser included offense of aggravated kidnapping. Any testimony about a marital relationship between Brady and Francine was irrelevant to the crimes of which Brady was found guilty.

Brady also claims that he was denied effective assistance of counsel because of the cumulative effect of errors including failure to file a motion to suppress his statement to a police officer about the marks on his hands and failure to object to the admission into evidence of a photograph of Francine. As to the failure to file a motion to suppress Brady's statement about the marks on his hands, there was overwhelming evidence against Brady even without this statement. Further, there is nothing to indicate that the statement was anything but voluntary or that it was given in response to any type of questioning. We conclude that counsel's

failure to object to the admission of the statement does not constitute ineffective assistance of counsel.

The photo of Francine was taken several days after the incident, and showed her teeth and gums. Brady argues that the photo was taken at a time too remote and when conditions had materially changed. However, the treating doctor testified that, due to her injuries, Francine was unable to open her mouth for several days after the beating. In light of that testimony, we conclude that counsel did not render ineffective assistance by failing to make the objections for which Brady argues.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

11