No. 04-096

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 215

STATE OF MONTANA,

       Plaintiff and Respondent,

   v.

JOHN P. MEYER,

       Defendant and Appellant.


APPEAL FROM:    The District Court of the Fourth Judicial District,
                    In and For the County of Missoula, Cause No. DC 2002-472,
                    Honorable Douglas G. Harkin, Presiding Judge


COUNSEL OF RECORD:

       For Appellant:

              Alice Kennedy, Public Defender's Office, Missoula, Montana

       For Respondent:

              Honorable Mike McGrath, Attorney General; Ilka Becker,
              Assistant Attorney General, Helena, Montana

              Fred Van Valkenburg, County Attorney; Andrew Paul, Deputy
              County Attorney, Missoula, Montana


                    Submitted on Briefs:  October 26, 2004

                                Decided:  September 6, 2005

Filed:

            _____
                         Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 John Meyer appeals from the judgment entered by the Fourth Judicial District Court, Missoula County, upon a jury verdict finding him guilty of aggravated kidnapping. We reverse and remand for a new trial.

¶2 The following issue is dispositive on appeal:

¶3 Did the District Court err in refusing to instruct the jury on the lesser included offense of unlawful restraint?

## BACKGROUND

¶4 On November 30, 2002, Darla Burnham and her boyfriend, John Meyer, with whom she resided, spent the evening at a few bars with a group of friends. As the evening progressed, tension mounted between Burnham and Meyer, leading to an incident in a parking lot of a Denny's restaurant, to which Burnham had given another man a ride in her car. After arriving separately, Meyer confronted Burnham and the other man while they were still in her car. Meyer cursed at Burnham as she exited the vehicle and went into the restaurant, passing two men on her way. The two men told Meyer that he should not be cursing at Burnham.

¶5 After a few minutes, Meyer came into the restaurant and sat next to Burnham. He had a bloody eye and was missing his glasses. Meyer said that the two men Burnham had passed had beat him up. About ten minutes later, Meyer left and went home. Burnham returned home a few hours later and went to bed.

¶6    At about 8:00 the next morning, December 1, 2002, Burnham woke up and started in the direction of the bathroom. Meyer told her that "she could just pee in bed" and grabbed her by the shoulder, face, and throat. A little while later, Meyer permitted Burnham to go into the bathroom, but he subsequently jerked her pants from her as she tried to put them on. He pulled her off the toilet by her hair and dragged her into the bedroom. Meyer did not permit Burnham to leave the bedroom for somewhere between thirty minutes and two hours.

¶7    Throughout the remainder of the day, Meyer, apparently motivated by jealousy, forced Burnham, at varying times, to remain in the house, though she did manage to venture out on several occasions. At one point in the morning, Burnham ran out of the house wearing only a shirt, but Meyer caught her on the front steps and pulled her back into the house by her hair. Later, Burnham went to the garage to sweep up leaves. When she opened the garage door to continue sweeping up leaves from the driveway, Meyer told her to close the door and come back into the house.

¶8    Sometime during the day, Burnham walked out of the house and down the road, but Meyer came after her in his truck and told her to get back in the house, which she did. At trial, Burnham recalled that during this excursion she had seen a man nearby putting a stroller in his car.

¶9    When Burnham again went outside to sweep leaves, Meyer threatened her with a rifle, warning her that he "was a dead-on shot at a hundred feet away." Meyer eventually tired of being outside as Burnham cleaned leaves from the yard and driveway, and he grabbed her

3

by the arm. Burnham spun away, leaving Meyer holding her coat and purse, but she complied with his order to go back into the house.

¶10 On another occasion during the day, Burnham walked the hundred yards or so down the street to an office where she paid the rent, again under the warning from Meyer that he was a "dead-on shot." Meyer remained on the front porch with a rifle and a clear line of sight to Burnham. Burnham passed another woman on the road but made no plea for help. Returning from the rental office, Burnham got into her car that was parked outside. She sat in the car for awhile on the pretense that she was looking for warranty information; she wanted to avoid going back into the house. Eventually, Meyer again tired of being outside and ordered her back into the house, threatening to drag her across the pavement if she did not comply. Meyer counted down from thirty and then yanked Burnham's hair. Meyer released Burnham's hair, she got out of the car, and they both went into the house.

¶11 Sometime during the latter part of the day, Meyer hit Burnham in the nose with an open palm, causing her to bleed. She went to get a wash cloth, and then sat down to go to the bathroom. As she sat there, Meyer hit her hard across the head.

¶12 Around 4:30 or 5:00 p.m., Burnham said that she needed to get some items for her lunch for the next day and that she needed to put air in her tires. Meyer permitted Burnham to leave. She drove to a friend's house and afterward went to the police.

¶13 Later that evening, Meyer was arrested, and he was subsequently charged with aggravated kidnapping. During the trial, the District Court rejected Meyer's proposed jury instruction that would have permitted the jury to consider unlawful restraint as a lesser

4

included offense of aggravated kidnapping. Meyer was found guilty, and he now appeals his judgment of conviction.

## STANDARD OF REVIEW

¶14 "We review jury instructions to determine whether the instructions as a whole fully and fairly instruct the jury on the applicable law. A district court has broad discretion in formulating jury instructions, and our standard of review is whether the court abused that discretion." *State v. Pittman*, 2005 MT 70, ¶ 30, 326 Mont. 324, ¶ 30, 109 P.3d 237, ¶ 30.

## DISCUSSION

¶15 **Did the District Court err in refusing to instruct the jury on the lesser included offense of unlawful restraint?**

¶16 Section 46-1-202(9), MCA, defines included offense:

> "Included offense" means an offense that:
>     (a) is established by proof of the same or less than all the facts required to establish the commission of the offense charged;
>     . . . or
>     (c) differs from the offense charged only in the respect that a less serious injury or risk to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission.

"Facts" in subsection (a) "refers to the statutory elements of the offense[], not the individual facts of the case." *State v. Beavers*, 1999 MT 260, ¶ 30, 296 Mont. 340, ¶ 30, 987 P.2d 371, ¶ 30.

¶17 Section 46-16-607(2), MCA, provides that "[a] lesser included offense instruction must be given when there is a proper request by one of the parties and the jury, based on the evidence, could be warranted in finding the defendant guilty of a lesser included offense."

5

Moreover, "there must be some basis from which a jury could rationally conclude that the defendant is guilty of the lesser, but not the greater offense." *State v. Castle* (1997), 285 Mont. 363, 369, 948 P.2d 688, 691.

¶18     As charged in the Information, Meyer was prosecuted under § 45-5-303(1)(c), MCA, which states in relevant part, "A person commits the offense of aggravated kidnapping if the person knowingly or purposely and without lawful authority restrains another person by . . . secreting or holding the other person in a place of isolation . . . to inflict bodily injury on or to terrorize the victim . . . ." The offense of unlawful restraint, a misdemeanor, is defined by § 45-5-301, MCA: "A person commits the offense of unlawful restraint if he knowingly or purposely and without lawful authority restrains another so as to interfere substantially with his liberty." Examining the relevant parts of the statutes defining the two offenses, it is apparent that the primary difference between the two is that an aggravated kidnapping–in the context of this case–would involve isolating the victim in order to injure or terrorize her, whereas unlawful restraint would merely require restraining another in a manner which substantially interferes with the victim's liberty.

¶19     Meyer argues that isolation with the intent to terrorize or injure differs only in degree from substantial interference with liberty. That is, the two elements are of the same character and thus are not mutually exclusive. Moreover, Meyer contends that the evidence could have supported the jury finding that he substantially interfered with Burnham's liberty without finding that he kept her in isolation. Therefore, he argues, the proposed instruction on the

6

lesser included offense should have been permitted, and the District Court violated § 46-16-607(2), MCA, in not doing so.

¶20 Citing *State v. Brummer*, 1998 MT 11, ¶ 51, 287 Mont. 168, ¶ 51, 953 P.2d 250, ¶ 51, and *State v. Brady* (1991), 249 Mont. 290, 296, 816 P.2d 413, 416, the State concedes that prior cases before this Court suggest unlawful restraint is a lesser included offense of aggravated kidnapping. However, the State argues that Burnham was never restrained when she was not also in isolation and that, in fact, there was no evidence of a restraint without the purpose to inflict bodily injury. Moreover, the State points out that, regardless of the events that followed, there was no evidence that Burnham was not held in isolation during the period from when she woke up until she was first permitted to leave her bedroom. Accordingly, the State maintains that the evidence did not support a finding of substantial interference with liberty without an additional finding of isolation with intent to injure, and thus the proposed instruction was correctly rejected.

¶21 The State's argument is unpersuasive. The fact that Meyer injured Burnham does not require a jury to conclude anything regarding isolation. A jury could have rationally concluded that Meyer injured Burnham but at the same time determined that, based on the several instances during the day when Burnham was allowed outside the home and encountered other people, she was not held in isolation. Although the State focuses on the events which occurred during the morning of December 1, it is even possible that a jury could have inferred from the excursions to the garage, yard, and neighborhood that Burnham was not isolated during any part of the day, including the early morning hours. What

7

constitutes isolation is fact-dependent and is therefore left to the trier of fact to determine, as long as there is some basis in the evidence for its conclusion. *See Castle*, 285 Mont. at 369, 948 P.2d at 691.

¶22 Consequently, we conclude that the jury instructions did not fully and fairly instruct the jury on the applicable law; that the evidence in this case presented a basis for a jury to rationally conclude the defendant was guilty of a lesser included offense; and that the District Court abused its discretion by rejecting the proposed instruction on unlawful restraint as a lesser included offense of aggravated kidnapping.

¶23 Meyer raises additional issues on appeal which we find unnecessary to address given our holding here. The judgment is reversed, and the case is remanded for a new trial.


/S/ JIM RICE


We Concur:


/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ PATRICIA O. COTTER