JUSTICE NELSON,
dissenting.
¶77 I dissent. I would hold that Demontiney v. Twelfth Judicial Dist. Court, 2002 MT 161, 310 Mont. 406, 51 P.3d 476, is dispositive and that the jury, having acquitted Schmidt of deliberate homicide (§ 45-5-102(l)(a), MCA), could not then logically find him guilty of mitigated deliberate homicide (§ 45-5-103(1), MCA).
¶78 In Demontiney, this Court reaffirmed that “ ‘a finding that the defendant satisfied the elements of deliberate homicide is a prerequisite to a conviction on the mitigated offense.’ ” Demontiney, ¶ 16 (quoting State v. Scarborough, 2000 MT 301, ¶ 48, 302 Mont. 350, 14 P.3d 1202) (emphasis in Scarborough). As we observed, the contrary “ ‘would require finding, first, that the defendant did not “purposely or knowingly cause the death of another human being” and, second, that he did so but only under the influence of extreme mental or emotional stress.’ ” Demontiney, ¶ 16 (quoting Scarborough, ¶ 49) (emphases in Scarborough). Thus, we held that “a finding of guilt on deliberate homicide is a precondition to a finding of guilt on mitigated deliberate homicide.” Demontiney, ¶ 17. We noted that the State had conceded that this statutory interpretation is correct. Demontiney, ¶ 17.
¶79 Here, the Court affirms Schmidt’s conviction of mitigated deliberate homicide on precisely the rationale which the Court rejected in Demontiney when reversing the same conviction in that case. *297 Opinion, ¶¶ 32, 38. In reaching this result, the Court cites Instruction No. 25 (see Opinion, ¶¶ 34,38), which first directed the jury to consider the evidence in terms of mitigated deliberate homicide and then directed the jury to consider the evidence in terms of deliberate homicide. Of course, the order in which the jury considered the two charges is beside the point, given that the jury subsequently acquitted Schmidt of deliberate homicide, as stated on the Verdict. The Court also observes that although the acquittal of deliberate homicide came in response to Question 1 on the verdict form and the conviction of mitigated deliberate homicide came in response to Question 2, “we cannot discern definitively whether the jury first acquitted Schmidt of deliberate homicide, or first convicted Schmidt of mitigated deliberate homicide.” Opinion, ¶¶ 35, 38. This is incorrect. Question 1 asked the jury to decide the charge of deliberate homicide and provided a line for the verdict. The jurors were instructed to “[w]rite on the above line ‘Guilty’ or ‘Not Guilty.’ ” Immediately below this, the jurors were instructed: “If you find the Defendant ‘Guilty of Deliberate Homicide, proceed to Question 3. If you find the Defendant ‘Not Guilty’ of Deliberate Homicide, proceed to Question 2.” Question 2 asked the jury to decide the mitigated deliberate homicide charge. Question 3 asked the jury to decide the dangerous weapon allegation. Thus, pursuant to the instructions on the verdict form, and given that “[w]e must presume that the jury followed the court’s instruction,” Opinion, ¶ 37, we can, in fact, discern definitively that the jury first wrote “Not Guilty” under Question 1 to the charge of deliberate homicide and then proceeded to Question 2, as instructed, and there wrote “Guilty” to the charge of mitigated deliberate homicide-the exact scenario which occurred in Demontiney. See Demontiney, ¶¶ 7, 20. But even setting aside the sequence in which the offenses were evaluated and decided, the fact remains that the jury still undisputedly acquitted Schmidt of deliberate homicide. The jury determined that Schmidt did not purposely or knowingly cause the death of James Correia.
¶80 Accordingly, our decision in Demontiney controls. See Demontiney, ¶¶ 8, 20-21 (concluding that the jury’s verdict of “guilty to mitigated deliberate homicide but not guilty to deliberate homicide” was “logically impossible,” and observing that “[w]e cannot imagine a much more prejudicial result to a defendant than a guilty verdict that is not logically possible”). As we held in that case and in Scarborough, there is no logical way the jury could find both that the defendant did not purposely or knowingly cause the death of another human being and that the defendant did purposely or knowingly cause the death of *298 another human being, though under the influence of extreme mental or emotional stress. Demontiney, ¶ 16; Scarborough, ¶ 49. “[A] finding of guilt on deliberate homicide is a precondition to a finding of guilt on mitigated deliberate homicide”-a point which the State conceded. Demontiney, ¶ 17 (emphasis added).
¶81 Here, however, the jury did precisely what we said in Demontiney it could not logically do. It found that Schmidt did not purposely or knowingly cause the death of Correia, but that Schmidt did cause Correia’s death, though under the influence of extreme mental or emotional stress. As Demontiney states: “ ‘[A] finding that the defendant satisfied the elements of deliberate homicide is a prerequisite to a conviction on the mitigated offense.’ ” Demontiney, ¶ 16 (quoting Scarborough, ¶ 48) (emphasis in Scarborough). To comply with this clear and unambiguous statement, the jury had to find Schmidt guilty of deliberate homicide and find that he acted under the influence of extreme mental or emotional stress.
¶82 The District Court not only failed to instruct the jury that it was required to find Schmidt guilty of deliberate homicide as a “precondition” or “prerequisite” to finding him guilty of mitigated deliberate homicide, the court actually directed the jury on the verdict form not to reach the charge of mitigated deliberate homicide unless it first found the defendant not guilty of deliberate homicide. In so doing, the court directly contradicted our holding in Demontiney and created the illogical scenario which required reversal in that case. And the jury did exactly as it was instructed on the verdict form. It did what we said was logically impossible in Demontiney. Regardless of who offered the verdict form (see Opinion, ¶ 40), it was ultimately the court’s obligation to fully and fairly instruct the jury on the law. State v. Archambault, 2007 MT 26, ¶ 14, 336 Mont. 6, 152 P.3d 698. That it plainly failed to do.
¶83 I cannot agree that under the District Court’s Instruction No. 25 and the verdict form, Schmidt was properly convicted of mitigated deliberate homicide. Indeed, he was acquitted of that charge because the prerequisite finding of deliberate homicide was not made by the jury.
¶84 That said, I continue to be amazed that the Legislature leaves the “offense” of mitigated deliberate homicide on the books. Mitigated deliberate homicide is technically a stand-alone criminal offense-a felony punishable by imprisonment for a term of not less than 2 years or more than 40 years, and by a fine of not more than $50,000. Section 45-5-103(4), MCA. As noted above, to prove this offense the State must *299 first prove that the defendant committed the offense of deliberate homicide, and then there must be “mitigating circumstances” which “reduce deliberate homicide to mitigated deliberate homicide.” Section 45-5-103(3), MCA. Curiously, there does not have to be any “evidence” of mitigation; just “mitigating circumstances.” Even more problematic, neither party has the burden of proving these “mitigating circumstances.” Section 45-5-103(3), MCA. “Mitigating circumstances” are neither an “element” of the reduced crime provable by the State nor an “affirmative defense” provable by the defendant. Section 45-5-103(3), MCA.
¶85 So, under this scheme, a person accused and convicted of mitigated deliberate homicide can be deprived of his or her liberty by imprisonment for up to 40 years and of his or her property by a fine of up to $50,000. Yet, no one bears the burden of proving the “mitigating circumstances” which reduce a greater offense to a lesser offense. And, apparently, these “mitigating circumstances” are not even subject to proof beyond a reasonable doubt, as they are not an element of the crime charged, thus leaving mitigated deliberate homicide with only one actual “element”-the deliberate homicide. Moreover, as a result of our decision today, the jury can actually acquit the defendant of the only statutory “element” contained within mitigated deliberate homicide-namely, deliberate homicide, i.e., “purposely or knowingly caus[ing] the death of another human being” (compare § 45-5-102(l)(a), MCA, with § 45-5-103(1), (3) MCA)-and yet, despite that acquittal, the jury can still find the defendant guilty of the offense of mitigated deliberate homicide, the only “element” of which is deliberate homicide. It is hard to envision a more nonsensical criminal offense.
¶86 To make matters worse, the Legislature has declared that mitigated deliberate homicide is “a lesser included offense” of deliberate homicide as defined in § 45-5-102(l)(a), MCA. See § 45-5-103(2), MCA. Elsewhere in the Code, “included offense” is defined as an offense that is “established by proof of the same or less than all the facts required to establish the commission of the offense charged.” Section 46-1-202(9)(a), MCA (emphasis added); see also State v. Meyer, 2005 MT 215, ¶ 16, 328 Mont. 247, 119 P.3d 1214 (noting that the term “facts” in § 46-1-202(9)(a), MCA, refers to the statutory elements of the offense, not the individual facts of the case). Technically speaking, mitigated deliberate homicide is established by proof of “the same” statutory “elements” as deliberate homicide and, in this respect, is an “included offense.” But this is only so because the Legislature has declared that mitigating circumstances (i.e., the facts *300 the jury must find to “reduce” deliberate homicide to mitigated deliberate homicide) are not an “element” of mitigated deliberate homicide. Practically speaking, however, mitigated deliberate homicide cannot be a “lesser included offense” of deliberate homicide, given that the jury must find all of the elements of deliberate homicide plus mitigating circumstances in order to find the defendant guilty of the mitigated offense.
¶87 And as if this weren’t bad enough, the Legislature has directed that “[w]hen a lesser included offense instruction is given, the court shall instruct the jury that it must reach a verdict on the crime charged before it may proceed to a lesser included offense.” Section 46-16-607(3), MCA (emphasis added). As noted, the verdict form in the present case followed this procedure. And yet, it is precisely this procedure which creates the logical impossibility we identified in Scarborough and Demontiney. “ ‘there is no logical way the jury could acquit on deliberate homicide and then consider mitigated deliberate homicide. To do so would require finding, first, that the defendant did not “purposely or knowingly cause the death of another human being” and, second, that he did so but only under the influence of extreme mental or emotional stress.’ ’’Demontiney, ¶ 16 (quoting Scarborough, ¶ 49) (emphases in Scarborough).
¶88 In other words, the Legislature has created a situation in which a defendant, under the law as stated in the Montana Code Annotated, can never be convicted of mitigated deliberate homicide. First, deliberate homicide and mitigated deliberate homicide contain the exact same “elements” (no more, no less), and those are “purposely or knowingly caus[ing] the death of another human being.” Sections 45-5-102(l)(a), -103(1), -103(3), MCA. Second, mitigated deliberate homicide is a “lesser included offense” of deliberate homicide. Section 45- 5-103(2), MCA. Third, a jury must reach a verdict on the crime charged before it may proceed to a lesser included offense. Section 46- 16-607(3), MCA. Fourth, since the statutory “elements” of deliberate homicide and mitigated deliberate homicide are identical (as noted, “mitigated circumstances” are not an “element” of the mitigated offense, § 45-5-103(3), MCA), a verdict of not guilty on deliberate homicide necessarily means a verdict of not guilty on the “lesser included offense” of mitigated deliberate homicide. The jury simply cannot find first, as it is supposed to do under § 46-16-607(3), MCA, that the defendant did not “purposely or knowingly cause[ ] the death of another human being,” § 45-5-102(l)(a), MCA (deliberate homicide), and then find second, again pursuant to the procedure in *301 § 46-16-607(3), MCA, that the defendant did “purposely or knowingly cause[ ] the death of another human being,” § 45-5-103(1), MCA (mitigated deliberate homicide). This statutory scheme could have been written by Rube Goldberg.[1]
¶89 Instead of perpetuating this absurdity, the next Legislature should simply dispose of the offense of mitigated deliberate homicide along with the notion that it is a lesser included offense of deliberate homicide. In its stead, to account for a homicide committed under the influence of extreme mental or emotional stress for which there is reasonable explanation or excuse (§ 45-5-103(1), MCA), the Legislature should create a new offense along the lines of manslaughter. See e.g. § 94-2507, RCM (1947) (defining voluntary manslaughter as the unlawful killing of a human being, without malice, upon a sudden quarrel or heat of passion). With this sort of statutory scheme, prosecutors could charge deliberate homicide and manslaughter in the same information as alternative offenses; the jury would be instructed as to the differing elements of each offense; and the jury could take their pick on the verdict form, depending on what actual evidence was proved beyond a reasonable doubt.
¶90 But if the Legislature chooses to retain the offenses of deliberate homicide and mitigated deliberate homicide, then where the jury is tasked with deciding which crime was committed, the jury should not be put in the position of having to render logically inconsistent verdicts on both deliberate homicide and mitigated deliberate homicide. Rather, the jury should be required to choose one or the other (or neither, if the defendant is not guilty of either charge). See e.g. Demontiney, ¶ 6 (noting that the State’s verdict form, which advised the jury to enter a verdict to only one charge, was consistent with our holding in Scarborough). Alternatively, to eliminate any possibility of confusion or inconsistency, the following verdict form could be used:
1. Did the defendant purposely or knowingly cause the death of another human being?
_Yes_No (Check one.)
If your answer is “Yes,” then proceed to question 2. If your answer is “No,” then do not proceed further; the foreperson should sign the verdict and return it to the bailiff.
*302 2. Did the defendant do so under the influence of extreme mental or emotional stress for which there is reasonable explanation or excuse?
_Yes_No (Check one.)
At least using this sort of verdict form would avoid the Demontiney problem and the one at issue here. The jury should not be required to render a verdict on both deliberate homicide and mitigated deliberated homicide as separate, stand-alone offenses.
¶91 Finally, it should be noted that in mitigated deliberated homicide, Montana’s Legislature has created a stand-alone, felony criminal offense in which there can first be an outright acquittal on the only “element” of the offense, and then the balance of the jury’s findings (whether the defendant acted under the influence of extreme mental or emotional stress for which there was reasonable explanation or excuse) are not subject to proof beyond a reasonable doubt by the government. This statutory scheme clearly violates the command of the Due Process Clause that an accused cannot be convicted of a crime “except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.” In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970). Given the Legislature’s seeming inability to rectify this situation and this Court’s refusal to address the problem, Schmidt is left with no other resort except to the United States Supreme Court.
¶92 Pursuant to our controlling decision in Demontiney, I would vacate Schmidt’s conviction and order him immediately released from confinement. See Demontiney, ¶ 28.1 dissent from our failure to do so.

 Rube Goldberg: “a comically involved, complicated invention, laboriously contrived to perform a simple operation.” http://www.rubegoldberg.com/ (accessed Dec. 7, 2009) (citing Webster’s New World Dictionary).